2001 WY 80

Lt. E. DALEY, a Casper Police Officer, in his individual capacity; Sgt. P. Eastes, a Casper Police Officer, in his individual capacity; and Marvin Shepard, a Casper Police Officer, in his individual capacity, Appellants (Defendants),

v.

Beverly WENZEL and Robert Wenzel, Appellees (Plaintiffs).

Beverly Wenzel and Robert Wenzel, Appellants (Plaintiffs),

v.

The Lounge Bar; The Town of Casper; Chief of Police Art De Werk, in his individual capacity; Lt. E. Daley, a Casper Police Officer, in his individual capacity; Sgt. P. Eastes, a Casper Police Officer, in his individual capacity; and Marvin Shepard, a Casper Police Officer, in his individual capacity, Appellees (Defendants).

Nos. 00–131, 00–132.

Supreme Court of Wyoming.

Aug. 30, 2001.

Rehearing Denied Nov. 1, 2001.

Gay Woodhouse, Wyoming Attorney General; John W. Renneisen, Deputy Attorney General; Francisco L. Romero, Senior Assistant Attorney General. Representing Lt. E. Daley, Sgt. P. Eastes, and Marvin Shepard. Argument by Mr. Romero.

Vonde M. Smith, J. Douglas McCalla, and Roy A. Jacobson, Jr., of Lawyers & Advocates for Wyoming, Jackson, Wyoming; Heather Noble of Jackson, Wyoming. Representing Beverly Wenzel and Robert Wenzel. Argument by Ms. Noble.

Michele K. McKellar of Boley & McKellar, P.C., Cheyenne, Wyoming, Representing The Lounge Bar.

Before LEHMAN, C.J.; GOLDEN and VOIGT, JJ.; DONNELL and PERRY, DJJ.

DONNELL, District Judge.

[¶ 1] In this appeal we consider several issues surrounding a judgment resulting from a personal injury accident. We affirm the judgment in all respects.

## ISSUES

[¶ 2] Beverly and Robert Wenzel state the issues for the Court's consideration:

A. Whether W.S. § 1–39–118(a), which limits to $250,000 the amount of damages recoverable by a single claimant from a governmental entity, violates Article 10, Section 4 of the Wyoming Constitution, which bars the legislature from enacting limits on the amount of damages to be recovered for causing the injury or death of any person.

B. The trial court erred in giving jury instruction stating that no person who has legally provided alcoholic liquor or malt beverage to any other person is liable for damages caused by the intoxication of the other person, when the instruction did not address any issue to be decided by the jury at trial, was cumulative of other instructions so that it overemphasized the issue of Mrs. Wenzel's intoxication, and was confusing as it stood in conflict with other negligence instructions.

C. Whether the trial court properly granted summary judgment dismissing Plaintiff's dram shop claim, or whether the grant of immunity from dram shop liability contained in W.S. § 12–8–301(a) is unconstitutional under the equal protection provisions of the Wyoming constitution.

The Lounge Bar states the issues slightly differently:

I. Whether the trial court properly instructed the jury on Wyoming Statute § 12–8–301(a) concerning dram shop immunity.

II. Whether Appellants Daley, Eastes and Shepard waived their right to object to the giving of Instruction No. 24 concerning dram shop immunity when they failed to make any objection prior to the submission of the instructions to the jury.

III. Whether there was sufficient evidence to support the jury's verdict finding The Lounge Bar 0% at fault.

IV. Whether Appellant Beverly Wenzel failed to properly challenge the constitutionality of Wyoming Statute § 12–8–301(a) at the trial court level, thereby waiving her right to present this issue on appeal.

V. Whether W.S. § 12–8–301(a) providing immunity from dram shop liability violates the equal protection provisions of the Wyoming Constitution.

Finally, Officers Daley, Eastes and Shepard (Officers) raise the following issues:

I. Did the district court commit prejudicial and/or plain error when it instructed the jury on Wyo. Stat. Ann. § 12–8–301 concerning dram shop immunity thereby misleading and confusing the jury on the applicable principles of law?

II. Was the jury's verdict finding the Lounge Bar free from liability supported by sufficient evidence?

## FACTS

[¶ 3] On the afternoon of Friday, May 13, 1994, Beverly Wenzel accompanied her husband, Robert, and their daughter, Julie, to a bar in Casper, Wyoming. The threesome remained at the bar until approximately 6:00 p.m. and then departed for home. Beverly consumed some amount of alcohol while at the bar, but the exact amount was later disputed at trial.

[¶ 4] After returning home, Beverly decided to go to another bar while Robert remained at the house. She arrived at The Lounge Bar sometime between 7:45 p.m. and midnight, the exact time again being disputed at trial. The parties also disputed whether Beverly was intoxicated at the time she reached The Lounge Bar.

[¶ 5] Beverly entered The Lounge Bar and sat on her "usual" bar stool. She consumed more alcohol, again the precise amount being a matter of contention. At some point, she became involved in a loud, profane argument with a patron that lasted approximately 15 to 20 minutes. At this point, Beverly apparently was intoxicated. The owner of The Lounge Bar, Mr. Cliff Chew, asked Beverly to "quiet down."

[¶ 6] What happened a few minutes later also was disputed by the parties. Apparently, Beverly either 1) put her head on her hands, became quiet, and rather suddenly "slid," feet-first, from the barstool gently onto the floor, or 2) passed out and fell forward from her barstool, hitting her head on the floor as she fell. Once on the floor, Beverly curled into a fetal position. A bar

employee and Chew checked on Beverly, placed a cold towel on her forehead, and attempted to "awaken" her. Both testified Beverly did not appear to have sustained any injuries. Chew then called Beverly's husband at home but received no answer, so he contacted 911 dispatch.

[¶ 7] In Chew's brief conversation with 911 dispatch, he told the dispatcher that Beverly was drunk and had passed out. He informed the dispatcher that Beverly did not have any medical problems "as far as he could tell" and was just "completely intoxicated." However, he failed to mention she had fallen from a barstool.

[¶ 8] After the call, Chew and the other employee moved Beverly to a nearby chair, feeling it was best if Beverly was sitting upright in case she vomited. Both individuals grabbed Beverly beneath her arms and dragged her to the chair, supporting her head against their bodies. However, once seated, it became apparent that Beverly was unstable on the chair, as she "stretched out" and gave the impression she might fall again. Chew and the employee again moved Beverly to the floor and propped her against a stack of beer cases in the corner. During the course of these events, Beverly mumbled incoherently and made occasional movements but did not regain consciousness.

[¶ 9] Shortly after 1:00 a.m., about fifteen minutes after the 911 call, Officer Ed Daley arrived at the scene. Daley spoke with Chew and asked if there were any medical problems, to which Chew replied "no" but confirmed that Beverly was intoxicated. Daley attempted to speak with Beverly but she replied incoherently; he made no further attempts to ascertain her medical condition. Shortly thereafter, Officer Pat Eastes arrived at the scene. Daley and Eastes concluded Beverly was highly inebriated and decided to transport her via patrol car to the hospital. While carrying Beverly from the bar, the Officers apparently lost their grip and either "dropped" or "sat" Beverly back to the ground. The Officers then continued to carry Beverly from the bar, with Daley

grabbing her beneath the underarms or by the wrists and Eastes grabbing her by either ankles or the bottoms of her pants.

[¶ 10] Once outside, the officers placed Beverly on the sidewalk and awaited the arrival of Officer Marvin Shepard.[1] Once Shepard arrived, all three officers began to lift Beverly into the patrol car but Shepard began to lose his grip and Beverly again was either "dropped" or "sat" back on the ground. Shepard re-gripped Beverly by the wrists and loaded her into the car while another officer pulled her across the seat from the opposite side of the car. Shepard attempted to close the car door but Beverly's head was protruding. The parties dispute whether the door was "firmly closed" on Beverly's head and "bounced back open" or whether her head was merely "touched." In any event, Beverly was pulled further on the seat so the door could be closed completely.

[¶ 11] After Beverly was loaded into Shepard's patrol car, she was transported to Wyoming Medical Center. At the hospital, emergency room personnel removed Beverly from Shepard's vehicle, positioned her on a gurney, and wheeled her inside. The Officers left the hospital at that time but were later contacted and instructed to return to the hospital, where they learned Beverly had suffered a broken neck and was possibly paralyzed. The medical testimony established Beverly suffered a hyperflexion injury (chin to chest) to her cervical spine, at the C–5, C–6 level, which damaged her spinal cord. The injury rendered Beverly quadriplegic, leaving her permanently paralyzed from the chest down, with some residual movement in her arms.

[¶ 12] On May 8, 1997, Beverly and Robert Wenzel filed their complaint against The Lounge Bar; the City of Casper; the Chief of Police, Art de Werk, in his official and individual capacity; the individual police officers, Daley, Eastes, and Shepard; and John Doe defendants. On January 26, 1998, the City of Casper and Chief de Werk, in his official capacity, were dismissed from suit under W.R.C.P. 12(b)(2) and (b)(5). Thereaf-

---

1. Apparently, these officers believed Officer Shepard should transport Beverly because he had vinyl seats in his patrol car.

ter, on February 5, 1998, Wenzels filed a second action against the City of Casper and Chief de Werk, in his official capacity only.

[¶ 13] On May 22, 1998, both suits were consolidated, and, on May 26, 1998, the district court granted partial summary judgment to the City of Casper and Chief de Werk on Wenzels' negligence, emotional distress, and consortium claims.

[¶ 14] On January 29, 1999, the district court issued its Decision Letter on subsequent motions for summary judgment. In its letter, the trial court dismissed the "negligent serving of alcohol" claim against The Lounge Bar and granted summary judgment on certain constitutional claims against the City of Casper, Chief de Werk, and the Officers. The court also disposed of certain emotional distress claims. The district court denied summary judgment on the medical assistance and Good Samaritan issues raised by The Lounge Bar, the state law claims against the Officers (negligence and consortium), and the Officers' claims of qualified immunity. All claims asserted against Chief de Werk in his individual capacity were dismissed. Robert Wenzel later voluntarily dismissed his consortium claim on October 15, 1999.

[¶ 15] The remaining negligence issues were tried to a jury from October 18 through October 26, 1999. On October 25, 1999, Wenzels moved the district court to disallow The Lounge Bar's proposed instructions on the Good Samaritan and dram shop statutes. The court refused the Good Samaritan instruction and gave Wenzels' instruction on the duty to a business invitee instead, but gave the instruction on the dram shop statute. During the instruction conference, Wenzels' counsel objected to the dram shop instruction but no objection was lodged by the Officers. The Lounge Bar originally tendered its instruction on dram shop liability, which was refused by the court, but the court proposed a modified version, Instruction No. 24, which was given.[2]

[¶ 16] The jury returned a verdict, finding Beverly fifty percent (50%) at fault, The Lounge Bar zero percent (0%) at fault, Daley twenty-five percent (25%) at fault, Shepard ten percent (10%) at fault, and Eastes fifteen percent (15%) at fault. The jury awarded Wenzels $2,500,000 in damages. The verdict was entered on October 26, 1999.

[¶ 17] Post-trial, Wenzels submitted their proposed Judgment on Jury Verdict, asking for the full amount of damages awarded by the jury. The Lounge Bar also submitted a proposed judgment. On December 13, 1999, the district court entered its Judgment on Jury Verdict, reducing the damage award by fifty percent (50%) to reflect Beverly's comparative fault and further reducing the award in compliance with Wyo. Stat. Ann. § 1–39–118 (LexisNexis 2001) of the Wyoming Governmental Claims Act ("WGCA"), to a total amount of two hundred fifty thousand dollars ($250,000).

[¶ 18] On December 17, 1999, Wenzels moved for additur and, in the alternative, for a new trial on their negligence claims against The Lounge Bar. On January 12, 2000, the Officers filed their Notice of Appeal with the Wyoming Supreme Court. Wenzels subsequently filed their Notice of Appeal on March 10, 2000.

## DISCUSSION

I. *The Constitutionality of Wyo. Stat. Ann. § 1–39–118(a) and Wyo. Stat. Ann. § 12–8–301(a)*

■ [¶ 19] This Court has emphasized repeatedly that "[it] strongly adhere[s] to the rule forbidding [it] to 'consider for the first time on appeal issues that were neither raised in, nor argued to, the trial court,' except for those issues which are jurisdictional or are fundamental in nature." *Bredthauer v. TSP,* 864 P.2d 442, 446 (Wyo.1993). Thus, where the issue of a statute's constitutionality is not raised in the trial court, we will not consider the matter unless the issue goes to jurisdiction or is otherwise of such a fundamental nature that the Court must take

---

2. Instruction No. 24, as given, stated in pertinent part: "No Person who has legally provided alcoholic liquor or malt beverage to any other person is liable for damages caused by the intoxication of the other person."

cognizance of it. *Nickelson v. People*, 607 P.2d 904, 907–08 (Wyo.1980).

[¶ 20] We have also stated "unless plain error is present, questions concerning the constitutionality of a statute are not considered on appeal if the party presenting them failed to present or argue the contentions in the trial court." *In Interest of DG*, 916 P.2d 991, 998 (Wyo.1996). The rationale for this rule is that "it is unfair to reverse a ruling of a trial court for reasons that were not presented to it, whether it be legal theories or issues never formally raised in the pleadings nor argued to the trial court." *Bredthauer*, 864 P.2d at 446–47.

■ [¶ 21] In their appeal of the judgment below, Wenzels raise, essentially for the first time, claims of unconstitutionality of two Wyoming statutes. The issues of the constitutionality of Wyo. Stat. Ann. § 1–39–118(a) (LexisNexis 2001) (involving the WGCA) and Wyo. Stat. Ann. § 12–8–301(a) (LexisNexis 2001) (involving dram shop liability/immunity) were not properly presented to the trial court. Wenzels raised no constitutional claims in their complaint or any other pleadings. In neither their response to The Lounge Bar's Motion for Summary Judgment nor in their response to its Renewal of Motion for Summary Judgment did Wenzels argue the constitutionality of either statute. Nor did they assert such issues in their Pretrial Memorandum or their Motion to Disallow Defendant's "Good Samaritan" and "Dram Shop" Instructions.

[¶ 22] Arguably, the constitutional issue concerning Wyo. Stat. Ann. § 1–39–118 could not have been foreseen and raised until the implementation of the statute by the district court. However, Wenzels failed to mention these concerns in their subsequent Motion for Additur or in the Alternative A New Trial on Negligence Claims Against The Lounge Bar. The only comment even approaching an objection to constitutionality of either statute was Wenzels' counsel's casual remark about the constitutionality of the dram shop statute during the final jury instruction conference. At that point, the attorney stated:

The last one for our objection, we believe the dram shop act is unconstitutional. It's special – gives specialized immunity to an

industry that ought not have it and it violates equal protection.

This conclusory assertion hardly satisfies the well-established requirement of "formally raising or arguing" the constitutional claims to the trial court as required by this Court. *Bredthauer*, 864 P.2d at 447. Except for a brief mention on a motion for costs, the record is completely devoid of any comment, conclusory or otherwise, as to the constitutionality of Wyo. Stat. Ann. § 1–39–118 until Wenzels' appeal.

[¶ 23] Because Wenzels failed to properly raise their constitutional claims regarding the Wyoming Governmental Claims Act and the dram shop statute at the trial court level, we will not entertain their constitutional challenges on appeal.

## II. *THE SUFFICIENCY OF THE EVIDENCE*

■ [¶ 24] The standard of review for sufficiency of the evidence is clear: "On review, this court assumes that the evidence in favor of the successful party is true. We leave out of consideration entirely the evidence presented by the unsuccessful party that conflicts with the evidence of the successful party, and we afford to the evidence of the successful party every favorable inference that may be reasonably and fairly drawn from it." *Turcq v. Shanahan*, 950 P.2d 47, 51–52 (Wyo.1997) (citations omitted); *Richardson v. Schaub*, 796 P.2d 1304, 1309–10 (Wyo.1990).

■ [¶ 25] The jury apportioned zero percent (0%) of the fault in this matter to The Lounge Bar. The Officers argue that, construing the evidence *in Wenzels' favor*, the jury's decision to exonerate The Lounge Bar from liability was not supported by sufficient evidence. They assert that the evidence clearly proves that The Lounge Bar breached its duty of care by moving Beverly on two occasions and by failing to advise both the 911 dispatcher and the responding Officers of Beverly's barstool fall.

[¶ 26] The problem here lies in the Officers' misapplication of the standard of review. Rather than reviewing the evidence in the light most favorable to Wenzels, this Court reviews the evidence in the light most

favorable to The Lounge Bar, who for purposes of this issue is considered the "successful party." Assuming the evidence in favor of The Lounge Bar to be true, as we are required to do, the evidence demonstrated the following:

A. Beverly entered The Lounge Bar at approximately midnight on May 14, 1994 and did not appear intoxicated. After approximately one-half hour, Beverly began arguing with another bar patron. Chew walked over to Beverly and asked her to "quiet down" and sit properly on her barstool. Beverly complied but was unhappy with this request.

B. Approximately one-half hour later, Beverly suddenly went limp and slid off her barstool "like a cartoon character." Her feet first hit the floor, her knees then buckled, and she slumped to the floor. There was no noise associated with the slide from the stool and the barstool was not knocked over in the process, leaving no indication of any injury to Beverly. Medical evidence indicated that such a "slide" would not produce the force necessary for a C–5, C–6 dislocation.

C. Chew and a bar employee immediately attended to Beverly, placing a cold towel on her forehead and talking to her. They determined Beverly was intoxicated and called 911 for assistance. The 911 tape indicated that Chew informed the dispatcher of Beverly's intoxication and was told that dispatch could not send anyone for thirty to forty minutes. Chew showed concern for Beverly's intoxicated state, asked "[w]hat do ya do in this kind of –," and seemed to proceed with Beverly's care in mind.

D. Chew and the bar employee moved Beverly to a chair, concerned she might vomit and choke. When Beverly appeared unsteady in the chair, they moved her to a display of beer cases where she could be propped in an upright position. During this process, Beverly was able to move her arms and legs, scratch her nose, and open her eyes.

E. When the Officers arrived, they treated Beverly as a "typical drunk," laughing about the situation. They did not inquire about her condition or evaluate Beverly for injuries. While transporting Beverly to the car, the officers dropped her a couple of time but continued, picking Beverly up by her wrists and ankles. They had difficulty loading Wenzel into the patrol car, resulting in the car door being slammed on her head and bouncing back open. Within minutes of arriving at the hospital, Beverly was complaining of neck pain for the first time. Medical evidence demonstrated that the impact from the patrol car door slamming on Beverly's head was the only incident of sufficient force to cause the injury Beverly received.

[¶ 27] Having reviewed the evidence in a light most favorable to The Lounge Bar, the Court concludes there clearly is sufficient evidence to justify a jury's finding that The Lounge Bar was not at fault for Beverly's injuries.

### III. JURY INSTRUCTION NO. 24

■ [¶ 28] Review of an allegedly improper jury instruction is well settled. W.R.C.P. 51(b) states in part:

> No party may assign as error the giving ... [of] an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of his objection.

See also *City of Cheyenne v. Simpson*, 787 P.2d 580, 581 (Wyo.1990). If no objection to a jury instruction is lodged, "this Court will review an alleged improper instruction only if plain error exists." *Simpson*, 787 P.2d at 582. The plain error doctrine permits this Court to address issues that were not brought to the attention of the trial court. *Carlson v. Carlson*, 888 P.2d 210, 213 (Wyo. 1995).

■ [¶ 29] If an objection properly is lodged, the appellate court reviews the instruction for error and prejudicial effect. *Vasquez v. Wal–Mart Stores, Inc.*, 913 P.2d 441, 443 (Wyo.1996). In reviewing alleged errors in jury instructions, a finding of error alone is insufficient to reverse; prejudicial error must be found. *In the Matter of CH*, 783 P.2d 155, 159 (Wyo.1989). Such error is

never presumed and must, instead, be demonstrated by the party asserting error. *Vasquez*, 913 P.2d at 443; *McWilliams v. Wilhelm*, 893 P.2d 1147, 1148 (Wyo.1995). To satisfy this burden, "there must be a reasonable possibility that, in the absence of error, the verdict might have been more favorable to a party, and the burden is on the appellant to show where the error is prejudicial." *In the Matter of CH*, 783 P.2d at 159.

■■■ [¶ 30] When generally examining the propriety of jury instructions, this Court reviews all instructions as a whole. "On review, this Court considers whether the instructions, taken as a whole, adequately and clearly advise the jury of the applicable law." *Kemper Architects, P.C. v. McFall, Konkel & Kimball Consulting Engineers, Inc.*, 843 P.2d 1178, 1182 (Wyo.1992).

We have said the function of jury instructions is to give the jury guidance regarding the law of the case. *Hursh Agency, Inc. v. Wigwam Homes, Inc.*, Wyo., 664 P.2d 27 (1983). The trial court is not obligated to give an instruction offered by a party as long as the jury is adequately instructed on the law as it pertains to that case. *Matter of MLM*, Wyo., 682 P.2d 982 (1984). The trial court's ruling on an instruction will not constitute reversible error absent a showing of prejudice, and prejudice will not be said to result unless it is demonstrated that the instruction confused or misled the jury with respect to the proper principles of law. *Cervelli v. Graves*, Wyo., 661 P.2d 1032 (1983).

*Sellers v. Dooley Oil Transport*, 2001 WY 44, ¶ 9, 22 P.3d 307, ¶ 9 (Wyo.2001) (quoting *DeJulio v. Foster*, 715 P.2d 182, 186 (Wyo. 1986)). In past decisions, this Court has applied a five-factor test in measuring the degree of error that may be considered prejudicial. Those factors are:

(1) [t]he extent to which there is conflict in the evidence on critical issues;

(2) whether or not the ... argument to the jury may have contributed to the instruction's misleading effect;

(3) whether or not the jury requested a rereading of the erroneous instruction or of related evidence;

(4) the closeness of the jury's verdict; and

(5) the effect of other instructions in curing the error.

*Simpson*, 787 P.2d at 581–82.

■■■ [¶ 31] We note at the outset that the Officers did not object to Instruction No. 24 at trial as required by W.R.C.P. 51(b). As a result, The Lounge Bar argues a plain error standard must now apply. However, Wenzels objected to Instruction No. 24 at trial, and they challenge the instruction now. The purpose of W.R.C.P. 51's requirement for objection is to inform the trial court of the nature and specific grounds of error in the instruction so that court can reconsider it and make any necessary modifications so as to avoid the error. *Davis v. Consolidated Oil & Gas, Inc.*, 802 P.2d 840, 843 (Wyo. 1990). We continue to adhere to the maxim, "if the trial judge is fully informed of the specific grounds of [the] objection ..., there is no need for repetition." *Edwards v. Harris*, 397 P.2d 87, 93 (Wyo.1964). Where, as here, the alleged error was brought to the attention of the trial court by one party, there was no need for additional parties also to object in order to satisfy W.R.C.P. 51's requirements. Thus, we shall consider any alleged error for prejudicial effect alone rather than plain error, despite the Officers' failure to lodge a separate objection at trial.

■■■ [¶ 32] The parties dispute the propriety of Instruction No. 24, which stated:

No [p]erson who has legally provided alcoholic liquor or malt beverage to any other person is liable for damages caused by the intoxication of the other person.

This instruction is a verbatim recitation of Wyo. Stat. Ann. § 12–8–301(a) (LexisNexis 2001), Wyoming's dram shop statute. As such, the instruction is a correct statement of general Wyoming law. However, Wenzels assert that the giving of Instruction No. 24 was prejudicial because, placing Instruction No. 24 in context with the parties' claims and with the other jury instructions, Instruction No. 24 was unnecessary. They argue it did not address any issues to be determined by the jury at trial, was inappropriately cumulative of other jury instructions indicating an intoxicated person was held to the same stan-

dard as a sober person, and was confusing as it stood in conflict with other jury instructions.

[¶ 33] Applying this Court's previously stated five-factor test for prejudice, first, the evidence presented at trial on critical issues was at conflict in many respects. The evidence of Beverly's intoxication varied in great degree. Although the parties agreed Beverly was extremely intoxicated at the time of her fall, few other facts were undisputed.

[¶ 34] Whether or not Beverly was intoxicated when she entered The Lounge Bar and, if so, the degree of that intoxication were important issues at trial. However, issues concerning the alleged negligent serving of alcohol had been dismissed earlier in the proceedings, and it was important that the jury understand, particularly in light of ongoing comments by counsel noted below, that liability could not be assigned to The Lounge Bar on that basis. While there was a clear conflict in the evidence, that is not determinative here.

[¶ 35] Second, arguments to the jury did not contribute to Instruction No. 24's misleading effect. Quite the contrary was true. Despite the fact that the "negligent serving" claim had been dismissed, Wenzels' and the Officers' counsel continued to make remarks during the trial that suggested The Lounge Bar may be liable for negligent serving of alcohol. For example, in her opening statement, one of Wenzels' attorneys stated: "This case is about the responsibility of bar owners in our community who serve alcohol for profit...." The Lounge Bar's counsel objected to ongoing references to the negligent serving issue, but to little avail. For example, Wenzels' counsel asked Chew, the owner of The Lounge Bar:

> Now, speaking of those policies, is it – is it your belief, Mr. Chew, that it would be an unreasonable thing to do to serve more alcohol to a highly intoxicated person? .... [a]nd that is because somebody that's already intoxicated can be a danger to themselves or others; isn't that also true?

Again, counsel for The Lounge Bar objected. This sort of incident occurred frequently throughout the course of the trial.

[¶ 36] It is clear that the trial court allowed Instruction No. 24, in large part, because of the continued improper references to the negligent serving of alcohol that peppered the trial. Had the court not allowed the instruction, the jury may very well have mistakenly believed they could attribute liability to The Lounge Bar based on negligent serving.

[¶ 37] On the other hand, counsel were careful not to misconstrue dram shop immunity in closing arguments. The Lounge Bar's counsel stated (emphasis added):

> On the percentage of fault of who is at fault, don't be confused by the fact that just because Wenzel walked into Mr. Chew's establishment, that he automatically becomes at fault for what happens there. He is an ordinary human being, and *he is to exercise reasonable care*, and he did just that in all of his actions. He took this seriously, he was concerned, and he acted responsibly.

Counsel for Wenzel stated:

> Now, I'm not trying to suggest to you that the bar is liable for serving Beverly Wenzel alcohol, because that's not the law in this case. If you look at Instruction Number 24 ... that instruction says that a person who has legally provided alcoholic beverages to another person is not liable for damages caused by the intoxication of that person.... [T]he language in this statute clearly indicates that The Lounge is responsible for injuries it caused Beverly Wenzel. And her damages that night weren't caused because she was intoxicated. They were caused because Cliff Chew moved her and failed to report her injuries....

[¶ 38] It is apparent that closing argument did not mislead the jury regarding the application of the dram shop instruction. Neither did The Lounge Bar's counsel mislead the jury into believing the dram shop statute precluded all liability on its part. Indeed, counsel clearly indicated that The Lounge Bar could be held to a "reasonable care" standard.

[¶ 39] Third, the jury did not request a re-reading of Instruction No. 24 or any related

evidence. Fourth, there is no indication of the "closeness" of the jury's verdict other than any inferences that may be drawn from the fact that the jury deliberated for approximately four hours and fifty minutes, beginning at 11:30 a.m. and ending at 4:20 p.m. They found a substantial amount of damages ($2.5 million), although less than what Wenzels had requested. They also found Beverly to be as much at fault as possible while still affording her a recovery (50%) and allocated the remaining liability among the parties.

[¶ 40] Finally, we consider the effect of other instructions in curing the error. Instruction No. 2, Wenzels' contention instruction, detailed their claims against The Lounge Bar and alleged negligence:

(1) for ignoring Beverly Wenzel's intoxicated state;

(2) by allowing her to fall asleep on a bar stool;

(3) by moving her to a chair after she slid off the bar stool;

(4) by moving her to the beer cases;

(5) by failing to convey proper information to 911 and to the police officers; and

(6) in caring for Wenzel after she slid off the barstool.

Wenzels' Instruction No. 19 stated that The Lounge Bar, as an owner and occupier of land, had a duty of reasonable care to Beverly while she was on the premises. Wenzels' Instruction No. 21 provided that a business whose employees are reasonably on notice that a customer is in distress and in need of emergency medical attention has a legal duty to come to the assistance of that customer. Additionally, the jury received Instruction Nos. 6, 7, 8, 9, 10, and 12, the Wyoming Pattern Jury Instructions for: the elements of negligence; causation; the plaintiff's burden of proof for negligence; the defendants' burden of proof for comparative fault; and the concept of comparative fault.

[¶ 41] Taken together, these instructions clearly indicated that The Lounge Bar could be liable for breaching a duty of reasonable care to Beverly, as a business invitee, and for failing to summon medical assistance. The instructions also indicated that The Lounge Bar could not be liable for injuries resulting from Beverly's intoxication. These instructions correctly stated the law, and Instruction 24 was the direct result of counsels' persistent attempts to "poison the well" during trial. Under the circumstances of this case, the instruction was properly given. When all instructions are considered together, it is apparent there was no prejudice.

[¶ 42] The situation here is at least somewhat analogous to those in which this Court has considered the invited error doctrine. Here, Wenzels effectively set up the necessity for this instruction by their continued inferences that liability could attach for negligent serving of alcohol. This despite the fact that the trial court had earlier determined and ordered this was not the case. Having created this difficult situation, Wenzel now complains that the trial court took steps to clarify the issue for the jury. Except in a situation where the error was necessarily prejudicial, we will not order a new trial under such circumstances. *Vanvorst v. State*, 1 P.3d 1223, 1229–30 (Wyo.2000); *Sanville v. State*, 593 P.2d 1340, 1344–45 (Wyo. 1979).

[¶ 43] The judgment of the district court is affirmed in all respects.