2003 WY 161

**James Gerard YATES, Appellant (Defendant),**

v.

**Jill Marie YATES, Appellee (Plaintiff).**

No. 03–19.

Supreme Court of Wyoming.

Dec. 16, 2003.

Representing Appellee: Nancy D. Freudenthal, of Davis & Cannon, Cheyenne, Wyoming.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

VOIGT, Justice.

[¶1]   James Gerard Yates (Father) appeals the district court's determination that he owes $105,700.50 in child support arrearages.   In 2001, Jill Marie Yates (Mother) filed a Motion for Production of Documents because Father had failed to provide her with financial information.   Father responded with a Petition for Modification of Child Support and Determination of Child Support Arrears.   As a shareholder in a Subchapter S corporation, Father reported significant amounts of pass-through income on his personal federal income tax return.   His primary contention at the modification hearing was that this pass-through S corporation income should not be included as income when calculating his support and arrearages.   The district court agreed with Father and calculated his child support without using his S corporation income.   On appeal, Father asks for an additional reduction in his obligation. The district court used Father's gross income in calculating his arrearages.   Father now contends that the district court should have used his after-tax income.   Because Father failed to raise this issue before the district court, we affirm.

## ISSUE

[¶2]   Father raises only one issue on appeal:

Did the trial court abuse its discretion when it failed to consider the state of the law at the time the decree of divorce was entered in defining "gross income" to be income before taxes as it applied to the computation of the child support arrearage owed by defendant.

## FACTS

[¶3]   When the parties were divorced, in August of 1989, the legislature had recently enacted Wyo. Stat. Ann. §§ 20–6–301, *et seq.* (1989), setting forth the guidelines for calcu-

Representing Appellant: Mitchell E. Osborn, Cheyenne, Wyoming.

lating child support.[1] In its divorce decree, the district court awarded Mother custody of the parties' two children subject to Father's reasonable visitation rights, and ordered that child support be paid as follows:

> Pursuant to the child support guidelines set forth in W.S. § 20–6–301 (1989 Supp.) *et seq*, HUSBAND be, and he hereby is, obligated to pay WIFE a contribution for the support of CHILDREN in the amount of thirty percent (30%) of his adjusted gross income, but in no event less than Three Hundred Ninety Dollars ($390.00) per month. Adjusted gross income is defined to be all of HUSBAND's gross income from any and all sources, less a living allowance for HUSBAND of Four Hundred Fifty Dollars ($450.00) per month which shall not be subject to a child support obligation[.]

[¶ 4] At the time of the divorce, Father's annual adjusted gross income, as defined by the divorce decree (his gross income minus a $450.00 monthly living allowance), was $14,636.00. For the next five years, Father met, or came close to meeting, his child support obligation. However, in 1995, his income nearly doubled, yet he did not increase his child support payments accordingly. Father was a partner in a relatively successful business venture and his income continued to increase during the next five years. In 2000, Father reported $310,084.00 of income on his personal income tax return. However, this included $167,551.00 of pass-through S corporation income that was not considered income for child support purposes. Therefore, in 2000, Father's adjusted gross income was $136,592.00, yet he paid only $6,000.00 in child support.

[¶ 5] In August of 2001, Mother filed a Motion for Production of Documents, in which she asserted that Father had failed to provide copies of his annual tax return as required by the divorce decree. She requested copies of Father's tax returns from 1989 to 2000, and asked that Father identify each and every business venture in which he had an interest. In response, Father petitioned for modification of child support and determination of arrearages. To his petition, Father attached a record of his child support payments, proffered as evidence that he had satisfied his obligation. However, after the parties exchanged financial affidavits, Father conceded that he was at least $45,000.00 in arrears.

[¶ 6] In June of 2002, the district court heard the case to determine arrearages and address the petition to modify. Father was represented by counsel and Mother appeared pro se. Both Mother and Father testified at the hearing. During Father's testimony, he offered into evidence Exhibit C, a chart outlining his child support obligation and arrearage amount from 1989 to 2002. Father described the chart as an "aid for the Court in determining [his] arrearages." The district court's ultimate determination of Father's arrearages appears to have been based on this chart, as the numbers the district court used are exactly the same as those provided by Father.

[¶ 7] The focal point of the hearing was whether the district court should include the S corporation income as part of Father's gross income when determining arrearages and future child support. The bulk of Father's testimony related to his S corporation income and his role and involvement in the business. Besides Mother and Father, the only other witness called was John Howard, Father's accountant. His testimony also focused on the S corporation issue. Mr. Howard testified generally about the nature of S corporation income and the benefits and risks of that corporate structure. Specifically, he explained that the pass-through income reported on Father's personal tax return was not available to Father, but rather was always put back into the corporation to facilitate growth and pay taxes and other debts.

---

1. This statute, in place only one year, was completely overhauled in the 1990 legislative session. The language pertinent to this appeal was found in Wyo. Stat. Ann. § 20–6–303:

   The basic child support obligation may be apportioned between the parents in proportion to their incomes. Four hundred fifty dollars ($450.00) income per month per parent shall be considered to be a minimum living allowance and shall not be subject to child support obligation.

[¶ 8] The question of whether taxes should be included in determining Father's gross income—the issue Father raises in this appeal—did not come up at the hearing until closing arguments. Father's attorney was addressing the arrearage amount when the district court interrupted:

THE COURT: Well, it's been a while since I looked at that from earlier hearings, but isn't it at least contemplated by the prior documents that gross income meant after taxes and after social security deductions?

[FATHER'S ATTORNEY]: Your Honor, we're in a very precarious part and that's normally the approach that I know the Court takes.

THE COURT: No, I'm talking about when the decree was entered.

[FATHER'S ATTORNEY]: What happened with this decree, Your Honor, because it was entered in the time between statutes going from one formula to another is that rather than using the statutory definition of gross income, or using—I guess getting to a net income figure, this decree actually says just deduct $450 a month from your gross. We're not going to worry about what your tax is.

THE COURT: Wait. Doesn't it define or contemplate that the gross means what he gets from his employer? Because he was employed at the time. What he got from his employer, he had deducted out of it withholding and social security. So it wasn't based on the top line. It was based upon what his check showed.

[FATHER'S ATTORNEY]: Well, Your Honor, I would agree that that is a great way and probably the way the Court contemplated that to happen. That isn't the way we've prepared our Exhibit C. And I will tell you that we used the actual gross without those deductions. And if we need to go back and determine what his social security and his presumptive tax would have been during those years, I certainly can do that.

But we took gross income to mean gross income. But I think you're right. I think that at that time, gross income was being defined differently than we define gross income today.

THE COURT: Well, somehow I have the impression that in the file I reviewed some documents that would indicate that they were deducting those taxes. Maybe it was just an exhibit at trial, but I see—

[FATHER'S ATTORNEY]: And, Your Honor, I will tell you I wouldn't have even thought to go to that point to try to figure out where they were coming from. I was going from the literal terms of the decree and the statute that existed in 1989.

THE COURT: See, those documents must have been part of trial exhibits. At least that would be consistent with where I got the idea there was an Exhibit A that showed some deductions and it contemplated a child support estimate of $315. And that would have been the defendant's exhibits. So you may be right. It wasn't necessarily in the mind of the Court. I just remember that when I reviewed the file.

[FATHER'S ATTORNEY]: Well, Your Honor, I certainly, as I said, I could take that Exhibit C and to aid the Court rerun the gross income numbers and present an amended exhibit to [Mother] and to the Court. I have those orders available to me and my office can do that within a couple of hours.

THE COURT: All right. Continue with your argument. I guess it's important for me to know that Exhibit C was based upon gross without taking into consideration any taxes. I didn't realize that when it was presented to be honest with you.

Go ahead.

Father's attorney then finished her closing argument without further mention of the issue.

[¶ 9] In its decision letter and order, the district court modified the child support obligation and addressed Father's arrearages. With respect to the arrearages, the district court accepted Father's argument and did not use the pass-through S corporation income as part of its calculation. Based on the language of the divorce decree, the district court calculated Father's arrearages at thirty percent of his adjusted gross income, and

entered a judgment on the arrearage in the amount of $105,700.50.

[¶ 10]  Father appeals from that judgment and subsequent order.

### STANDARD OF REVIEW

[¶ 11]  Father challenges the district court's determination of child support arrearages.  We recently stated:

> Decisions related to child support are assigned to the sound discretion of the district court.  *Jordan v. Brackin*, 992 P.2d 1096, 1098 (Wyo.1999).  We will not disturb a district court's ruling unless we are convinced that the court has abused its discretion.  *Id.*
>
> > "In determining whether there has been an abuse of discretion, we focus on the 'reasonableness of the choice made by the trial court.'  *Vaughn v. State*, 962 P.2d 149, 151 (Wyo.1998).  If the trial court could reasonably conclude as it did and the ruling is one based on sound judgment with regard to what is right under the circumstances, it will not be disturbed absent a showing that some facet of the ruling is arbitrary or capricious.  *Id.* (*citing Byerly v. Madsen*, 41 Wash.App. 495, 704 P.2d 1236 (1985)); [(*Basolo v. Basolo*, 907 P.2d 348, 353 (Wyo.1995))]."

*Cossette v. Cossette*, 2003 WY 107, ¶ 10, 76 P.3d 795, 797 (Wyo.2003) (*quoting Jordan v. Brackin*, 992 P.2d 1096, 1098–99 (Wyo.1999)).

### DISCUSSION

[¶ 12]  Father argues that the district court should have used his after-tax income in calculating his arrearages.  He presents two arguments in support of this position.  First, he contends that the undefined term "gross income" in the 1989 child support statute should be interpreted to mean "disposable income" as defined in the 1989 income withholding statute.  Second, he asserts that, although the 1989 child support statute required that child support be calculated using "gross income," the prior and subsequent versions of that statute indicate that the legislature intended "gross income" to mean income after taxes.  Father present-ed neither of these arguments to the district court at the modification hearing.

[¶ 13]  We have stated that " '[w]e strongly adhere to the rule forbidding us to "consider for the first time on appeal issues that were neither raised in, nor argued to, the trial court," except for those issues which are jurisdictional or are fundamental in nature.' "  *Hronek v. St. Joseph's Children's Home*, 866 P.2d 1305, 1309 (Wyo.1994) (*quoting Bredthauer v. TSP*, 864 P.2d 442, 446–47 (Wyo.1993) and *Oatts v. Jorgenson*, 821 P.2d 108, 111 (Wyo.1991)).  " 'We follow this rule because "it is unfair to reverse a ruling of a trial court for reasons that were not presented to it, whether it be legal theories or issues never formally raised in the pleadings nor argued to the trial court." ' "  *Hronek*, 866 P.2d at 1309 (*quoting Bredthauer*, 864 P.2d at 446–47 and *Oatts*, 821 P.2d at 111); *see also* 5 Am.Jur.2d *Appellate Review* § 690 (1995).  "We of course must not judge the matter of abuse of discretion on the basis of showings made to us on appeal.  We must judge on the basis of showings made to the trial court. . . ." *Holly Sugar Corp. v. Perez*, 508 P.2d 595, 599 (Wyo.1973).  We have articulated and followed this principle on numerous occasions.  *See Rock Springs Land and Timber, Inc. v. Lore*, 2003 WY 100, ¶ 35, 75 P.3d 614, 627 (Wyo.2003); *State v. Campbell County School Dist.*, 2001 WY 90, ¶ 35, 32 P.3d 325, 333 (Wyo.2001); *Daley v. Wenzel*, 2001 WY 80, ¶ 19, 30 P.3d 547, 552–53 (Wyo.2001); *Robinson v. Pacificorp*, 10 P.3d 1133, 1136 (Wyo.2000); *Cooper v. Town of Pinedale*, 1 P.3d 1197, 1208 (Wyo.2000); *WW Enterprises, Inc. v. City of Cheyenne*, 956 P.2d 353, 356 (Wyo.1998); *Squaw Mountain Cattle Co. v. Bowen*, 804 P.2d 1292, 1296 (Wyo.1991); *Epple v. Clark*, 804 P.2d 678, 681 (Wyo.1991); *Esponda v. Esponda*, 796 P.2d 799, 802 (Wyo.1990); *R.O. Corp. v. John H. Bell Iron Mountain Ranch Co.*, 781 P.2d 910, 913 (Wyo.1989); *U.S. Aviation, Inc. v. Wyoming Avionics, Inc.*, 664 P.2d 121, 125 (Wyo.1983); *Roush v. Roush*, 589 P.2d 841, 844 (Wyo.1979); *Thickman v. Schunk*, 391 P.2d 939, 943 (Wyo.1964); *Gore v. John*, 61 Wyo. 246, 157 P.2d 552, 556 (1945); and *Ideal Bakery v. Schryver*, 43 Wyo. 108, 299 P. 284, 293 (1931).

[¶ 14]   Father does not suggest that this newly raised issue is jurisdictional or fundamental in nature; rather, he asserts that he properly raised the issue before the district court.  He contends that the issue was raised in his Petition for Modification of Child Support and Determination of Child Support Arrears where he asked the district court to "review and adjust the child support obligation. . . ." He maintains that the request to "review" amounts to a request that the district court interpret the language of the decree and determine how much child support was owed.  Father also asserts that merely bringing a matter to the district court's attention has been interpreted to preserve the issue for review on appeal.  He quotes *Polo Ranch Co. v. City of Cheyenne*, 969 P.2d 132, 137 (Wyo.1998): "[t]hough perhaps the claim was not prosecuted with the greatest clarity, especially with regard to the relief sought, . . . the matter was broached on several occasions by both parties . . . [u]nder these circumstances, we cannot say that the issue was not raised below." He also notes *Carlson v. BMW Indus. Service, Inc.*, 744 P.2d 1383, 1387 (Wyo.1987), where we held that an attorney's statements that " '[i]f we can't continue the matter until such time . . .' " sufficiently raised the issue of abuse of discretion in denying a continuance.

[¶ 15]   Father's position is that an issue may be raised by implication from the pleadings, or that the mere mentioning of an issue is sufficient to preserve it for appeal.  This notion runs contrary to both the purpose of the rule and our established jurisprudence.  We have held that we will not consider issues that were not "raised below in *any meaningful manner*." *Beaugureau v. State*, 2002 WY 160, ¶ 11, 56 P.3d 626, 631 (Wyo. 2002) (emphasis added).  "It is a basic premise of appellate practice that to preserve an issue for appeal, that issue must be called to the attention of the trial court in a *clear manner*." *Elder v. Jones*, 608 P.2d 654, 660 (Wyo.1980) (emphasis added).

[¶ 16]   Father never clearly called the issue of whether to use after-tax income in calculating his arrearages to the district court's attention nor was it ever raised in any meaningful manner.  Not until closing argu-

ment was the issue even mentioned, and then it was the district court judge, not Father, who raised it.  No evidence was presented to the district court directly regarding this issue.  Moreover, the evidence presented to the district court by Father was actually contrary to the position he now takes on appeal.  At the hearing, Father presented Exhibit C, a chart that he and his attorney prepared as an "aid for the Court in determining [his] arrearages."  This chart used his gross, rather than after-tax, income to calculate his arrearages.  Father now asks us to do just the opposite.  Indeed, Father's presentation to the district court appears to have been predicated on his attorney's perception that the statute's and the divorce decree's deduction of a $450.00 per month living allowance was in lieu of a deduction for taxes paid:

> What happened with this decree, Your Honor, because it was entered in the time between statutes going from one formula to another is that rather than using the statutory definition of gross income, or using—I guess getting to a net income figure, this decree actually says *just deduct $450 a month from your gross. We're not going to worry about what your tax is.*

(Emphasis added.)  In other words, Father conceded in district court that he was not entitled to the additional deduction that he is now pursuing on appeal.

[¶ 17]   Not only was the issue never clearly raised or meaningfully addressed, it appears that the issue did not even occur to Father until the district court raised it during closing arguments.  After the district court interrupted, Father's attorney explained that when preparing the exhibit in which they used gross income, they "took gross income to mean gross income. . . . Your Honor, I will tell you I wouldn't have even thought to go to that point to try to figure out where they were coming from.  I was going from the literal terms of the decree and the statute that existed in 1989."  Father's attorney offered to amend Exhibit C using after-tax income; however, no amendment appears in the record.

[¶ 18]   Father now contends that "determination of the legislative intent and the meaning of 'gross income,' as used in the 1989 version of W.S. § 20–6–301, *et seq.* was a 'material factor deserving significant weight' in the case at hand," and that the district court "ignored the interpretation of that term within the statute and therefore committed an abuse of its discretion." However, this "factor" was " 'never formally raised in the pleadings nor argued to the trial court.' " *Daley,* 2001 WY 80, ¶ 20, 30 P.3d at 553 (*quoting Bredthauer,* 864 P.2d at 446–47); *see also Oatts,* 821 P.2d at 111. We cannot decide whether a district court abused its discretion by ignoring a factor associated with an issue that was never properly raised. *Holly Sugar Corp.,* 508 P.2d at 599.

[¶ 19]   We acknowledge that we have, in the past, considered issues not raised before the district court, despite the fact that they did not involve jurisdiction or were not fundamental in nature. In *YellowBear v. State,* 874 P.2d 241, 245 (Wyo.1994), we stated, "[a]lthough Appellant properly should have initially raised all his claims in the district court, in the interest of judicial economy, we will consider the claims which he has raised for the first time on appeal." *See also Boller v. Western Law Associates, P.C.,* 828 P.2d 1184, 1187 (Wyo.), *cert. denied,* 506 U.S. 869, 113 S.Ct. 198, 121 L.Ed.2d 140 (1992).[2]  We have also addressed issues not raised before the district court that are bound to emerge again if left unresolved. *See Joyner v. State,* 2002 WY 174, ¶ 13, 58 P.3d 331, 336 (Wyo. 2002).  Such exceptions to our normal rule are, however, rare.

■■■■ [¶ 20]   Father does not argue nor do we find that the new issue he brings before us raises a jurisdictional question. Neither is it so fundamental as to require present resolution in the absence of meaningful development in the district court.  We will abide by our long-standing rule forbidding us to consider for the first time on appeal an issue that was not raised or argued in the district court.  Father, as the appellant, bears the burden of presenting a sufficient record upon which a decision can be based.  *Erhart v. Evans,* 2001 WY 79, ¶ 18, 30 P.3d 542, 547 (Wyo.2001) (*citing Wood v. Wood,* 865 P.2d 616, 617 (Wyo.1993)).  Likewise, the burden of demonstrating an abuse of discretion rests on the appellant.  *Robinson v. Hamblin,* 914 P.2d 152, 155 (Wyo. 1996).  Father has not met those burdens.

### CONCLUSION

[¶ 21]   The issue before the district court was whether pass-through Subchapter S corporation income should be included in Father's income for child support computation purposes.  The district court resolved that issue by relying on the divorce decree and the controlling statute.  Father now asks this Court to decide whether income taxes and other expenses should have been deducted from his gross income before computing his child support obligation.  That issue not having been raised before the district court, we decline to consider it.  The judgment of the district court is affirmed.

---

2.  Justice Thomas criticized this approach in his dissent stating, "I initially note that, despite the claim made in the majority opinion justifying this disposition on the basis of 'judicial economy,' we should not disregard our long-standing rule that forbids the consideration of issues that are raised for the first time on appeal."  *Boller,* 828 P.2d at 1188.