# IN THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 27

### OCTOBER TERM, A.D. 2024

#### March 11, 2025

KATTIE BOLINE,

Appellant
(Plaintiff),

v.

JKC TRUCKING, an Illinois
corporation, and JERZY SYRZYNA,

Appellees
(Defendants).

S-24-0157

*Appeal from the District Court of Sweetwater County*
The Honorable Suzannah G. Robinson, Judge

*Representing Appellant:*
  Sean M. Larson and Nathan Nicholas, Hathaway & Kunz, Cheyenne, Wyoming.

*Representing Appellees:*
  James C. Worthen, Hall & Evans, LLC, Casper, Wyoming; Jeffrey D. Clarke, Hall & Evans, LLC, Denver, Colorado.

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**JAROSH, Justice.**

[¶1]    After sustaining injuries from a car accident, Kattie Boline sued JKC Trucking (JKC) and driver Jerzy Syrzyna for negligence.  At her jury trial, Ms. Boline violated a stipulated order in limine prohibiting testimony about insurance.  The district court found Ms. Boline's violation of the order was intentional, declared a mistrial, and sanctioned Ms. Boline by ordering her to pay $62,074.95 in defense attorneys' fees and costs.  The district court also ruled it would not hold another jury trial until Ms. Boline paid the sanction.  When Ms. Boline failed to pay the sanction as ordered, the district court dismissed her case with prejudice and entered judgment against her for $62,074.95.  Ms. Boline appeals, arguing the district court abused its discretion and violated the Wyoming Constitution.  We affirm.

## ISSUES

[¶2]    Ms. Boline states one issue, which we restate as two:

> 1. Did the district court abuse its discretion by sanctioning Ms. Boline and dismissing her case with prejudice for violating a motion in limine resulting in a mistrial?
>
> 2. Did the district court violate Ms. Boline's right to open access to the courts under Article I, Section 8, of the Wyoming Constitution by sanctioning her and dismissing her case with prejudice for violating a motion in limine resulting in a mistrial?

## FACTS

[¶3]    On the evening of March 3, 2014, Ms. Boline returned to Southwest Wyoming Regional Airport after a work trip as a celebrity talent director.  From the airport, she drove her Mitsubishi Eclipse westbound onto I-80 toward Rock Springs.  Shortly after Ms. Boline entered the interstate, a tractor-trailer driven by Mr. Syrzyna, and owned and operated by JKC, struck the back of her vehicle at highway speed.  The Mitsubishi Eclipse spun out of control and came to rest in the sagebrush on the right side of the interstate.  Ms. Boline was transported by ambulance to Memorial Hospital of Sweetwater County where she was treated for her injuries and released.

### A.  Pretrial Proceedings

1

[¶4]    Ms. Boline filed a complaint against Mr. Syrzyna and JKC in district court on February 28, 2018.  She alleged negligence and sought punitive damages against each defendant.[1]

[¶5]    The case proceeded slowly, resulting in several continued and reset trial dates, and multiple pretrial conferences, before trial was finally set for August 11, 2022.  Prior to the first pretrial conference on March 10, 2021, the parties filed their motions in limine, two of which are germane to this appeal.

[¶6]    First, JKC and Mr. Syrzyna (hereinafter collectively "JKC") moved to exclude evidence of insurance coverage at trial subject to Wyoming Rule of Evidence 411.  Ms. Boline agreed the court should grant the motion, which it did both orally and in a subsequent written order.  In the written order, the district court instructed counsel "to request a sidebar if this ruling must be revisited before eliciting [such] testimony."

[¶7]    Second, Ms. Boline sought exclusion of evidence related to her lawsuit against her employer at the time of the collision, Celebrity Experience.  JKC argued the lawsuit was relevant to her alleged damages from the accident because it revealed she left her role at Celebrity Experience due to her employee/employer relationship as opposed to her collision-related injuries.  The district court determined it could not rule on the motion prior to trial because the relevance of Ms. Boline's lawsuit against Celebrity Experience depended on the presentation of her case against JKC.  Accordingly, the district court again ordered counsel "to request a sidebar on this matter before eliciting other lawsuit testimony."

[¶8]    The district court held a second pretrial conference on July 6, 2022.  The parties did not ask the district court to revisit its prior rulings on the relevant motions in limine.  In its written order following the second pretrial conference, the district court confirmed its orders from the March 10, 2021, pretrial conference remained in effect.

## B.  Jury Trial

[¶9]    The trial began on August 11, 2022.  The district court started the proceeding by addressing the parties and counsel outside the presence of prospective jurors.  The court summarized its pretrial rulings and, in discussing preliminary jury instructions it intended to give, harkened back to the stipulated motion in limine related to insurance, stating "[i]nsurance is irrelevant."  After empaneling the jury, the district court provided the following instruction to the jurors: "Whether any party has insurance is irrelevant to the issues you must decide.  You are specifically instructed that you shall not consider any kind of insurance or other benefits during your deliberations on any issue."

---

[1] The district court dismissed the punitive damage claim against JKC prior to trial and dismissed the same claim against Mr. Syrzyna after the mistrial.

2

[¶10]  The parties gave their opening statements and Ms. Boline was called as the first witness.  On direct examination, Ms. Boline provided her biographical background, described her role at Celebrity Experience which required extensive foreign and domestic travel, recounted the collision, and described the injuries she sustained to her head, neck, and hips.  The district court then recessed for the day.

[¶11]  The next day Ms. Boline's direct examination continued.  After the district court granted permission to publish to the jury a photograph of Ms. Boline's damaged Mitsubishi Eclipse at the scene of the collision, she testified as follows:

> PLAINTIFF COUNSEL:  Ms. Boline, what do you think about when you see this picture?
>
> MS. BOLINE:  Do you want to know the truth?  No matter what is said today this is the truth, this is what happened.  You can't hide it.  It's the truth.  A semi rolled over me and pushed my chair forward.  So I'm very lucky to be alive so -- and I'm very grateful.  And I know I'm on this journey for a reason.  All I ask, that you guys remember this picture.  That's it.  Just remember this picture.  That's all you have to remember.[2]
>
> DEFENSE COUNSEL:  Your Honor, there is no question pending.
>
> THE COURT:  Objection is sustained.  Ms. Boline, you need to wait for a question.
>
> MS. BOLINE:  Okay.
>
> PLAINTIFF COUNSEL:  Ms. Boline, what else would you like to say?
>
> MS. BOLINE:  Just -- just remember this picture.  It's real, it happened.  No matter what anyone says today, this happened.  And I'm not going after the trucker or the trucking company.  It's the insurance.  That's what insurance is for.

JKC objected and the district court held a sidebar.  JKC immediately moved for a mistrial arguing the testimony violated the district court's pretrial order excluding evidence of

---

[2] The record indicates that following the end of this statement, a long unexplained pause occurred which prompted JKC's objection.

insurance. The district court then excused the jury so it could address the attorneys outside of the jurors' presence.

[¶12] The district court heard argument on the motion for mistrial and discussed with the parties what limiting instruction it might provide, after which the court briefly recessed. After the recess, but before reconvening the jury, the district court announced it was taking the mistrial motion under advisement. The district court also reminded Ms. Boline not to discuss insurance and instructed her not to make any additional pleas to the jury. The district court reconvened the jury, instructed the jurors to disregard Ms. Boline's previous statement, and allowed Ms. Boline to continue her direct examination.

[¶13] Ms. Boline's testimony eventually returned to the nature of her injuries, how the injuries impacted her work travel after the collision, additional medical treatment she received, and how the collision impacted her lifestyle, finances, and employment. On cross-examination, JKC probed Ms. Boline's connection to a celebrity doctor, her treatment by that doctor, and her departure from Celebrity Experience.

[¶14] Prior to JKC inquiring as to why Ms. Boline left Celebrity Experience, the district court dismissed the jury for a short time and heard argument from the parties regarding whether and to what extent JKC could inquire as to her lawsuit against Celebrity Experience — the subject of Ms. Boline's motion in limine described above.

[¶15] Ultimately, the district court limited JKC's inquiry to a handful of general questions and the court and counsel confirmed with Ms. Boline her understanding that inquiry into the lawsuit was limited to those questions and her answers:

> PLAINTIFF COUNSEL: And that would be three yes answers or potentially a partly for the first question. So it's probably going to be partly, yes, yes, and no expansion?
>
> MS. BOLINE: Okay.
>
> PLAINTIFF COUNSEL: Okay.
>
> THE COURT: Ms. Boline, does that make sense?
>
> MS. BOLINE: Yes, ma'am.
>
> THE COURT: Okay. And I'm not telling anyone that you should testify in a specific way if it's not true, but if that is the true answer that's -- it needs to be very short and quick.
>
> MS. BOLINE: Yes.

[¶16] After the jury returned, Ms. Boline answered the three questions as discussed and, as instructed, refrained from expanding on the answers or providing additional details related to the lawsuit.

[¶17] As the second day of trial concluded, the district court ordered the parties to submit bench memoranda on the motion for mistrial. Noting it was a Friday, the district court said it would review the briefs before trial continued the following Monday. It also directed the parties to address this Court's decision in *Terry v. Sweeney*, 10 P.3d 554 (Wyo. 2000), in their briefing.

## C. Mistrial, Sanctions, and Dismissal

[¶18] On Monday, August 15, 2022, the district court held a conference on the motion for mistrial where it stated its conclusions of law and found Ms. Boline intentionally interjected insurance into her testimony and made a deliberate plea to the jury. The court also addressed Ms. Boline's argument that her conduct was excusable because she has short-term memory loss resulting from the collision:

> It is argued that Ms. Boline suffers from a traumatic brain injury and as a result she has short-term memory loss and does not have a filter. She testified that she says things that she shouldn't at times. And while this may be true, it was made clear to the Court during the remainder of her testimony on Friday that when instructed to not say certain things she can sufficiently follow instructions. A clear example of that and her abilities to be able to do that was made apparent when she was given instructions that she could not expand or say things related to prior lawsuits. Ms. Boline was only a few minutes into her testimony Friday morning when she deliberately testified about insurance. So the Court finds that there is no reason she could not have avoided the statement that she made.

The district court then granted the mistrial, found an award of sanctions was warranted, ordered JKC to submit its fees and costs, and dismissed the jury. The district court issued its written order granting the mistrial that same day.

[¶19] JKC requested $120,528.88 in fees and costs associated with the mistrial. Out of that amount, $61,358.50 constituted attorney and paralegal fees for trial preparation starting in May 2022, a July 2022 mediation, trial appearances, and post-trial work preparing its bill of costs. JKC also requested $59,170.38 in expenses that included non-reimbursable expert and interpreter fees, in addition to expenses for copies, FedEx, travel, lodging, and meals.

5

[¶20]  Ms. Boline objected to JKC's request and argued for a reduction of the proposed sanction.  She scrutinized the hours billed for attending mediation and other non-trial related matters.  She also provided a declaration disclosing her annual income and stated she could not pay the amount sought by JKC.  Finally, Ms. Boline expressed remorse for violating the district court's order.

[¶21]  The district court granted JKC's request for fees and costs on November 9, 2022. In granting the request, the district court recognized its obligation to determine what is a "reasonable" award of attorneys' fees.  It then found the hourly rate incurred by JKC was reasonable, as was the presence of two defense attorneys and a paralegal at trial.  However, the district court exercised "billing judgment" in determining which hours billed by JKC were attributable to the mistrial.  As a result, it limited the award of attorneys' fees to $28,434.00, which covered the period between August 10, 2022 (the day before trial) and August 24, 2022.

[¶22]  The district court recognized travel, lodging, and meal expenses associated with a mistrial are generally acceptable categories to award as a sanction.  The district court limited the expenses to the August 2022 trial period, awarded actual costs for lodging, and applied State of Wyoming government rates for mileage reimbursement and meals.  It also rejected JKC's request for copies and FedEx charges, but awarded the actual amount for non-refundable expert and interpreter fees.  Accordingly, the district court reduced JKC's request for $59,170.38 in costs and expenses to $33,640.95.

[¶23]  In total, the district court awarded $62,074.95 to JKC for the mistrial.  The district court also ordered Ms. Boline to pay the entire sanction within ninety days and stated it would not convene a new jury until the amount was paid in full.

[¶24]  Ms. Boline moved for relief from the sanction on December 1, 2022, stating she was without the means to comply with the district court's order.  As an alternative, she requested leave to pay the sanction following a judgment in a new trial.  The district court denied the motion on January 17, 2023.  It relied on our ruling in *Terry* and reasoned that Ms. Boline had her day in court but deliberately chose to violate a pretrial order.  According to the district court, granting her requested relief would require JKC to twice bear the cost of trial at the expense of her actions.

[¶25]  Ten days later, Ms. Boline moved for a six-month extension to pay the sanction. She also asked the district court to consider a partial payment prior to a new trial, with the remaining balance due upon judgment.  The district court denied the motion as relief previously requested and denied.  It then vacated two pending spring trial dates but kept a summer 2023 trial setting in place.

6

[¶26] As the summer trial date approached, Ms. Boline filed a notice of inability to pay sanctions. JKC then moved to dismiss the case with prejudice and asked the district court to convert the sanction into a monetary judgment. After the parties briefed the motion to dismiss, the district court gave Ms. Boline an additional four months to pay the sanction. Ms. Boline made no payments and, on February 13, 2024, the district court dismissed the case with prejudice and entered a money judgment against Ms. Boline. Ms. Boline timely appealed.

*STANDARD OF REVIEW*

[¶27] "'A district court has discretion in overseeing the conduct of court proceedings and imposing sanctions when a party violates its orders.'" *Corely v. Wyoming Rents, LLC*, 2024 WY 51, ¶ 25, 547 P.3d 333, 338 (Wyo. 2024) (quoting *Nw. Bldg. Co., LLC v. Nw. Distrib. Co.*, 2012 WY 113, ¶ 18, 285 P.3d 239, 243 (Wyo. 2012)). The court's ruling on a motion for mistrial is reviewed for an abuse of discretion. *Dollarhide v. Bancroft*, 2010 WY 126, ¶ 4, 239 P.3d 1168, 1170 (Wyo. 2010) (ellipsis and citations omitted). We also review the granting of costs as a sanction under the same standard. *Id.* (citations omitted). The party appealing an order to dismiss has the burden to demonstrate an abuse of discretion. *Corley*, ¶ 25, 547 P.3d at 338 (citing *Int. of Bass*, 2020 WY 27, ¶ 5, 458 P.3d 857, 858 (Wyo. 2020)).

[¶28] "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Dollarhide*, ¶ 4, 239 P.3d at 1170 (citations omitted). A court abuses its discretion when it acts in a manner which exceeds the bounds of reason under the circumstances. *Circle C Res. v. Hassler*, 2023 WY 54, ¶ 22, 530 P.3d 288, 295 (Wyo. 2023) (citations omitted). The ultimate issue for this Court to determine on appeal is whether the trial court could reasonably conclude as it did. *Id.* (citing *Heimer v. Heimer*, 2021 WY 97, ¶ 34, 494 P.3d 472, 481-82 (Wyo. 2021)).

[¶29] Constitutional issues are questions of law, which we review de novo. *Reynolds v. Bonar*, 2013 WY 144, ¶ 7, 313 P.3d 501, 503 (Wyo. 2013) (citing *Osborn v. State*, 2012 WY 159, ¶ 8, 290 P.3d 1096, 1098 (Wyo. 2012)).

*DISCUSSION*

I. **The district court did not abuse its discretion when it sanctioned Ms. Boline and ultimately dismissed her case with prejudice.**

[¶30] Ms. Boline does not appeal the district court's grant of a mistrial. Rather, she argues the district court's additional monetary sanction was unreasonable because it did not consider her mental health condition, financial situation, and the allegedly excessive nature

of the costs JKC incurred preparing for trial. Ms. Boline also maintains the district court abused its discretion when it ultimately dismissed her case after she demonstrated she was unable to pay the district court's sanction. In short, she asserts dismissal of her case with prejudice and the monetary judgment were unreasonable "double sanctions."

[¶31] While Ms. Boline does not appeal the mistrial directly, the imposition of monetary sanctions was the consequence of the mistrial, so we begin by briefly addressing a district court's authority to grant a mistrial and the standard for reviewing dismissal as a sanction.

[¶32] We recognize "[g]ranting a mistrial is an extreme and drastic remedy that should be resorted to only in the face of an error so prejudicial that justice could not be served by proceeding with trial." *Dollarhide*, ¶ 16, 239 P.3d at 1173 (quoting *Warner v. State*, 897 P.2d 472, 474 (Wyo. 1995)). Yet, "[t]he trial court is also in the best position to assess the prejudicial impact of such error." *Id*. In determining whether there has been an abuse of discretion, we focus on the "reasonableness of the choice made by the trial court." *Jordan v. Brackin*, 992 P.2d 1096, 1098 (Wyo. 1999) (quoting *Vaughn v. State*, 962 P.2d 149, 151 (Wyo. 1998)). If the trial court could reasonably conclude as it did and the ruling is one based on sound judgment with regard to what is right under the circumstances, it will not be disturbed absent a showing that some facet of the ruling is arbitrary or capricious. *Jordan*, 992 P.2d at 1098 (citations omitted); *see also Dollarhide*, ¶ 4, 239 P.3d at 1170 (recognizing judicial discretion includes "conclusions drawn from objective criteria" and "sound judgment" as to what is right under the circumstances without acting arbitrarily or capriciously).

[¶33] The parties stipulated to, and the district court granted, a pretrial motion to preclude evidence of insurance coverage. Prior to opening statements, and with Ms. Boline in the courtroom, the district court instructed the jury not to consider insurance in rendering its verdict. The next day, Ms. Boline was asked on direct examination about a photograph of her damaged vehicle. In response to an open-ended line of questioning, she made an appeal directly to the jury stating: "[a]nd I'm not going after the trucker or the trucking company. It's the insurance. That's what insurance is for." JKC objected and the district court held a sidebar where JKC moved for a mistrial which was later granted.

[¶34] The district court was within its discretion to declare a mistrial having found Ms. Boline's statement about insurance was intentional and deliberate. *See Elite Cleaners & Tailors, Inc. v. Gentry*, 510 P.2d 784, 786 (Wyo. 1973) (stating "a deliberate injection of insurance coverage into the trial of a damage action presents a basis for a new trial."). It also had the authority to sanction Ms. Boline for her misconduct. *See Dollarhide*, ¶¶ 21-23, 239 P.3d at 1175 (discussing the inherent authority of courts to sanction parties). Therefore, we will not reverse the district court "unless what was done by the district court was unreasonable." *Id.,* ¶ 24, 239 P.3d at 1175-76.

8

[¶35] Our prior rulings provide the Court with the means to review the district court's actions. Ms. Boline, however, invites us to adopt the Tenth Circuit's five-part test for evaluating dismissal as a sanction. *See Ehrenhaus v. Reynolds*, 965 F.2d 916, 920-21 (10th Cir. 1992). We previously declined to adopt the *Ehrenhaus* factors because doing so was not necessary to our holding. *See Groskop as Trustee of Black Diamond Liquidating Litigation Trust v. S&T Bank*, 2020 WY 113, ¶ 45, 471 P.3d 274, 288 n. 20 (Wyo. 2020). In the absence of a compelling reason, we again find it unnecessary to adopt *Ehrenhaus* here. We therefore proceed to examine Ms. Boline's arguments using our existing analytical framework.

### A. The district court's assessment of Ms. Boline's culpability in light of her condition.

[¶36] Ms. Boline contends the district court did not completely consider her mental or emotional condition when, after declaring a mistrial, it also ordered monetary sanctions. The district court's written order granting the mistrial and awarding sanctions closely mirrored the oral ruling described above, and both acknowledged Ms. Boline's injuries and what impact they may have had on her testimony:

> It is argued Ms. Boline suffers from a traumatic brain injury and as a result has short term memory loss and does not have a filter. Ms. Boline testified that, as a result of her injury, she says things she should not at times. While this may be true, it was made clear to the Court during the remainder of her testimony on Day Two that when instructed to not say certain things, Ms. Boline is able to sufficiently follow instructions. A clear example of Ms. Boline's abilities to do so occurred when she was given instructions to not expand or say certain things related to prior lawsuits, and only give short answers to this line of questioning. She successfully followed this instruction. Related to the mistrial motion, Ms. Boline was only a few minutes into her testimony [during the morning of August 12] when she deliberately testified about insurance; consequently the Court finds Ms. Boline could have avoided the statement she made, but made a deliberate decision to testify otherwise.

Although she argues we should reexamine her culpability because her remarks to the jury occurred at a moment when "emotions were high," the district court found her comments willful because she demonstrated an ability to follow the court's other instructions including limitations on a prior lawsuit where she was a plaintiff. Moreover, the district court expressly considered the emotional environment during Ms. Boline's testimony stating she "was clearly emotional during her testimony, and remained so throughout the majority of her testimony" that day. The district court then explained how Ms. Boline

9

contributed to the emotional environment immediately before she impermissibly testified "it's the insurance" she was after:

> There were pauses that appeared to be given for emotional emphasis by both Ms. Boline and counsel during the questions and answers. This testimony with pauses and pleas to the jury gave the Court concern and made the Court uncomfortable where Ms. Boline's testimony was going. This is likely why Defense counsel objected when it did. The Court immediately sustained the objection without waiting to hear a response from Plaintiff's counsel as it ordinarily would, due to the Court's concerns, and admonished Ms. Boline from making further statements without a question.

As the district court subsequently explained in its sanction order, the deliberate and intentional nature of Ms. Boline's testimony formed the basis for awarding costs and expenses to JKC.

[¶37] This Court is "in no position to second-guess the trial court's on-site, real-time assessment" of the prejudicial nature of an improper statement to the jury. *Dollarhide*, ¶ 16, 239 P.3d at 1173; *see also Miller v. Breyer*, 2014 WY 84, ¶ 38, 329 P.3d 956, 969 (Wyo. 2014) (same). Without the opportunity to observe Ms. Boline's demeanor in the courtroom, a review of the trial transcript reveals nothing more than the words she used, without the context and "true circumstances as existed in the courtroom on the day and hour it occurred." *Terry*, 10 P.3d at 557. The district court considered the nature of her injuries and the emotional circumstances, and found Ms. Boline was culpable for her testimony. Because its findings were supported by the record, the district court's assessment of Ms. Boline's condition was not arbitrary and capricious, and therefore not an abuse of discretion.

### B. The district court's consideration of Ms. Boline's financial status.

[¶38] Ms. Boline also argues the district court did not consider her financial status when it sanctioned her to pay attorneys' fees and costs to JKC. In her objections to JKC's verified request for fees, costs, and sanctions, Ms. Boline provided two sentences in the background section of her brief noting her annual income and stating she could not afford paying "anywhere near the amount" requested by JKC. She attached a short four-sentence declaration stating the same. However, Ms. Boline provided no legal argument supporting the proposition that her financial status should factor into the sanction. On appeal, Ms. Boline now suggests the district court should have considered her financial resources.[3]

---

[3] Ms. Boline relies primarily on *Caldwell v. Cummings*, 2001 WY 106, 33 P.3d 1138 (Wyo. 2001), which discusses "instructive" factors a court may consider when awarding Rule 11 sanctions against an attorney

10

[¶39]   We cannot find the district court abused its discretion for failing to consider an issue that was not fully presented to it.  *See Yates v. Yates*, 2003 WY 161, ¶ 13, 81 P.3d 184, 188 (Wyo. 2003) ("We of course must not judge the matter of abuse of discretion on the basis of showings made to us on appeal.  We must judge on the basis of showings made to the trial court[.]") (quoting *Holly Sugar Corp. v. Perez*, 508 P.2d 595, 599 (Wyo. 1973)).  Even so, when Ms. Boline raised her financial status voraciously in subsequent filings, the district court acknowledged her circumstances.  And when the district court denied Ms. Boline's successive requests for relief from the sanction, it did so by relying on our reasoning in *Terry* which recognizes the pitfalls of allowing a party to go unpunished for misconduct at trial.  *See Terry*, 10 P.3d at 599 (affirming sanction that "appears to be intended to deter [the offending party] from again violating a trial court order with impunity.").

[¶40]   We find the district court did not abuse its discretion regarding Ms. Boline's financial condition.

### C.      The district court's assessment of attorneys' fees and costs.

[¶41]   Ms. Boline also contends the district court's assessment of JKC's costs and fees was unreasonable.  Recognizing the district court reduced the costs requested by JKC, Ms. Boline argues the expense categories it did not modify, such as lodging and meals, were excessive.  She also maintains the award of attorneys' fees was excessive.

[¶42]   We have stated "the authority for both the sanction and the method of assessment is founded in the inherent authority of all courts to 'take actions reasonably necessary to administer justice efficiently, fairly, and economically and [to ensure] the court's existence, dignity, and functions.'"  *Terry*, 10 P.3d at 588 (citations omitted).  Additionally, the Uniform Rules for District Courts provide:  "[w]hen a mistrial is caused by any party, the court may order that the party, or parties, reimburse the proper fund for fees and mileage paid to the witnesses, jurors and bailiffs for their attendance."  U.R.D.C. 503(b).

[¶43]   JKC sought $59,170.38 in total "costs and expenses" related to the mistrial.[4]  Out of that amount, JKC claimed $9,988.35 in travel, lodging, and meal expenses incurred by the JKC trial team.  The district court found travel, lodging, and meals are generally

---

for pre-trial misconduct.  *See Caldwell*, ¶ 13, 33 P.3d at 1142 (citing 5A Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure:  Civil 2d, § 1337 (Supp. 2001)).  We find *Caldwell* unpersuasive here.

[4] The bulk of the $59,170.38 in costs and expenses requested by JKC consisted of non-refundable fees for retained experts and an interpreter for Mr. Syrzyna.  It also included reimbursements paid to the jurors for their time served during the trial.  Ms. Boline does not dispute the amounts awarded for these costs and expenses on appeal.

allowable expenses but confined the requested expenses to the trial itself. Accordingly, it limited the award of travel expenses for the day prior to trial through the day the mistrial was granted. The district court awarded the actual cost for lodging within the trial timeframe and instead of awarding actual costs for meals and travel expenses, the district court applied State of Wyoming government rates for meals and mileage reimbursement. Accordingly, the district court reduced the sanction to $7,015.95 in travel, lodging, and meals.

[¶44] Ms. Boline's assertion that the district court failed to review entire categories of expenses associated with the mistrial is unfounded. The district court scrutinized JKC's proposed expenses for travel, lodging, and meals. It also exercised its discretion soundly by rejecting costs for copies, legal research, and expenses associated with mediation that occurred weeks prior to trial. The district court's use of objective criteria, such as the prevailing State of Wyoming government rates for travel reimbursement and *per diem* was not excessive, and was certainly not an abuse of discretion. *See Vaughn*, 962 P.2d at 151 (recognizing judicial discretion includes conclusions drawn from objective criteria).

[¶45] Ms. Boline also argues her sanction for attorneys' fees was excessive. JKC asked the district court to award $61,358.50 in legal fees. The district court recognized its obligation to determine what fees are reasonable and that the burden of proving reasonableness rested with JKC. The court then applied applicable law. *See, e.g., Weiss v. Weiss*, 2009 WY 124, ¶ 8, 217 P.3d 408, 410-11 (Wyo. 2009) (stating our district courts are to follow the federal lodestar test for determining the reasonableness of attorneys' fees). Ms. Boline does not challenge the district court's finding that the hourly rate for JKC's counsel, or the presence of a paralegal at trial, was unreasonable. Instead, she asserts (with no additional argument) that "there were several areas where it was clear that the attorney fees" could be reduced.

[¶46] The district court evaluated JKC's billing judgment and concluded any award of fees should be attributable to the mistrial, and the mistrial only. As a result, the district court denied awarding JKC attorneys' fees associated with pretrial activities and reduced the proposed sanction to $28,434.00.

[¶47] Although Ms. Boline contends the reduced sanction remains unfair by drawing upon comparisons with the amounts awarded in other cases, our review of sanctions awarded by district courts is based on the "particular facts and circumstances" of each case. *Terry*, 10 P.3d at 559; *see also Dollarhide*, ¶ 18, 239 P.3d at 1174 (finding the district court's assessment was reasonable by drawing upon the circumstances of that case). Here, the district court applied the applicable law and tailored the amount awarded to JKC for lost attorneys' fees associated directly with the mistrial. We find the district court's scrutiny of JKC's fees and its subsequent reduction was not an abuse of discretion.

12

## D.     Dismissal with prejudice.

[¶48]  Ms. Boline communicated to the district court on several occasions that she could not pay the fees and costs awarded to JKC prior to a new trial.  Despite extensions by the district court, she did not make any payments toward the sanction, and the district court dismissed the case with prejudice.  Ms. Boline now argues dismissal was unjust because she "attempted to comply with the sanction" by asking the district court to either reduce the sanction or allow payment after a judgment.  In sum, she contends the district court abused its discretion by not entering a "lesser sanction" before dismissing the case.

[¶49]  Ms. Boline relies on authorities from other jurisdictions to argue the district court should have reduced her sanction even more.[5]  Particularly, she argues the Eleventh Circuit "requires courts to reduce sanctions to reflect what a party can actually pay." *See Martin v. Automobili Lamborghini Exclusive, Inc*, 307 F.3d 1332, 1337 (11th Cir. 2002).   In *Martin,* that court affirmed the lower court's dismissal of the case where plaintiffs perpetuated fraud upon the court. *Martin*, 307 F.3d at 1335-36.  But it reversed the lower court's joint and severable $1.5 million sanction against the three plaintiffs where one individual only had a net worth of $32,300. *Id.* at 1337.  The Eleventh Circuit reasoned the lower court should have considered the "*combined* financial ability to pay" because sanction orders should not involve sums that defy common sense. *Id.*  No other state court has relied on *Martin* and Ms. Boline offers no reason why it is necessary for us to adopt it here.

[¶50]  Even if we found *Martin* persuasive, the sanction against Ms. Boline did not defy common sense.  The district court reduced JKC's proposed submission by nearly half and sanctioned Ms. Boline for the actual costs associated with the mistrial.  Approximately fifteen months after the district court awarded fees and costs to JKC, no payments were made, and the district court issued its judgment dismissing the case with prejudice.  Although Ms. Boline argues the dismissal of her case constituted a "double sanction" against her, dismissal was the ultimate consequence of her failure to follow the district court's orders.

[¶51]  Having found the district court's consideration of Ms. Boline's health and financial condition was sound and that its calculation of fees and costs was not arbitrary or capricious, we have no trouble concluding the district court did not abuse its discretion when it subsequently dismissed the case with prejudice after Ms. Boline failed to comply with the sanction. *See Terry*, 10 P.3d at 560 (finding the district court did not abuse its inherent authority to dismiss the case following plaintiffs' failure to pay any portion of the awarded sanction).

---

[5] Ms. Boline relies on several Rule 11 cases reviewing sanctions for attorney misconduct.  As previously discussed, we do not find these Rule 11 cases relevant or instructive. *See, supra* n.3.

13

**II. The district court did not violate Ms. Boline's right to access the courts.**

[¶52] Ms. Boline also argues the district court violated her right to open courts under the Wyoming Constitution because the nature of the sanction, which she could not pay, prevented her from obtaining a new trial.

[¶53] We have held "that the right to access to the courts is a fundamental right pursuant to Article 1, Section 8" of the Wyoming Constitution. *Mills v. Reynolds*, 837 P.2d 48, 54 (Wyo. 1992). And we have also stated:

> It is generally recognized that a court does not violate an open courts provision when it acts to punish conduct that disrupts the orderly administration of justice. *See, e.g., Jensen v. Zuern,* 517 N.W.2d 118, 129 (N.D. Ct. App. 1994); *Williams v. State,* 405 N.W.2d 615, 624–25 (N.D. 1987); *Protect Our Mountain Environment, Inc. v. District Court in and for County of Jefferson,* 677 P.2d 1361, 1367 n. 6 (Colo. 1984) (en banc); *Eismann v. Miller,* 101 Idaho 692, 619 P.2d 1145, 1150 ([Idaho] 1980).

*Terry*, 10 P.3d at 559. Accordingly, "[w]e have expressly held that there is no violation of art. 1, § 8 of the Wyoming Constitution when a district court orders a trial postponed until sanctions are paid." *White v. State ex rel. Wyoming Dep't of Transp.*, 2009 WY 90, ¶ 15, 210 P.3d 1096, 1100 (Wyo. 2009) (citing *Terry*, 10 P.3d at 559-60); *see also Reynolds*, ¶¶ 9-11, 313 P.3d at 503-04 (discussing our holdings in *Terry* and *White* and affirming dismissal after party did not comply with court orders).

[¶54] Ms. Boline acknowledges this Court's previous rulings on this constitutional issue. Nonetheless, she argues the facts of her case are distinguishable from *Terry* because her sanction was larger and only fifteen months passed before the district court dismissed her case.

[¶55] In *Terry*, the plaintiff acted contrary to the district court's order and made an impermissible reference to insurance during the trial. *See Terry*, 10 P.3d at 555-56. The district court declared a mistrial, awarded sanctions to the defendant, and conditioned the setting of a new trial on the payment of the sanction. *Terry*, 10 P.3d at 556. The district court set multiple deadlines for the plaintiff to pay the sanction, which were not met. *Id.* Almost three years after its original order setting out the sanction, the district court dismissed the plaintiffs' claim with prejudice. *Id.* at 557.

[¶56] In addition to challenging the sanction in that case on appeal, the plaintiff argued the district court's dismissal violated her right to access courts under Article I, Section 8

of the Wyoming Constitution. *Id.* at 559. After recognizing the general understanding that a court does not violate an open courts provision when it acts to punish conduct that disrupts the orderly administration of justice, we reasoned:

> The record reflects no effort by [the plaintiff] to make any level of payment, no matter how small. It is specious to argue that, despite an almost three-year grace period, the court's sanction constituted denial of access to the courts to a plaintiff who was already physically in court and who made no apparent efforts to comply with its orders. Holding as [the plaintiff] requests could be interpreted to mean that individuals of limited resources can violate court orders with impunity and suffer no consequence while those of more substantial resources shall bear the cost. This would be an equal protection issue. Or perhaps no one, regardless of means, shall bear the cost.

*Id.* at 559. This Court then found the district court's condition that the plaintiff pay the sanction before resetting the matter for trial was not an abuse of discretion and did not infringe upon her right to access the courts. *Id.* at 560.

[¶57] Our ruling in *Terry* is virtually indistinguishable in that Ms. Boline asserts the sanction prevented her from securing a new trial. Much like *Terry,* Ms. Boline's testimony expressly violated a pretrial order, a mistrial was declared, sanctions were awarded, no effort was made to pay those sanctions despite several extensions to the payment deadline, and ultimately, the district court dismissed the case. We also do not find merit in the distinction between three years and fifteen months of non-payment before the district court dismissed each case. Ms. Boline's conduct made clear to the district court she did not intend to pay the sanction, as she made no payments toward the award in the timeframe she was given despite multiple extensions.

[¶58] Next, Ms. Boline directs us to rulings in other jurisdictions[6] to support her argument that the constitutional issue is not necessarily the suspension of further proceedings until the sanction was paid, but rather, the size of the sanction which frustrated her constitutional right.

[¶59] Parties invoking a constitutional question must present "sound historical research and rigorous constitutional analysis that form the necessary predicate to principled constitutional interpretation." *See Robinson v. Pacificorp*, 10 P.3d 1133, 1136 (Wyo.

---

[6] None of the cited Michigan appellate decisions speak to a litigant's right to access courts under a state constitutional provision. They are therefore unpersuasive in answering the constitutional issue presented in this case. *See Fenton Country House, Inc. v. Auto-Owners Ins. Co.*, 234 N.W.2d 559 (Mich. Ct. App. 1975); *Carmack v. Cichon*, 201 N.W.2d 669 (Mich. Ct. App. 1972); *Benmark v. Steffen*, 132 N.W.2d 48 (Mich. 1965).

2000) (discussing the body of law examining the "open courts" provision common to state constitutions) (citation omitted); *see also Morgan v. State*, 2004 WY 95, ¶ 20, 95 P.3d 802, 808 (Wyo. 2004) (reiterating that "in order for this Court to undertake an independent state constitutional analysis, the appellant must 'use a precise and analytically sound approach and provide us with the proper arguments and briefs to ensure the future growth of this important area of law.'").

[¶60] Ms. Boline's reliance on inapposite outside authorities does not constitute the rigorous analysis necessary to disturb our previous rulings on this constitutional issue. *See Morgan,* ¶ 20, 95 P.3d at 808 (finding the reliance on rulings from other states alone did not "satisfy our specific requirements" for conducting independent constitutional analysis). She also offers no authority suggesting impecuniosity following an award of sanctions frustrates a right to access state courts.

[¶61] The open courts provision was included in our Constitution to guarantee the equal administration of justice by the judiciary and was not intended to "create a fundamental right to full legal redress." *Greenwalt v. Ram Rest. Corp. of Wyoming*, 2003 WY 77, ¶ 33, 71 P.3d 717, 728 (Wyo. 2003). Ms. Boline's argument that her sanction prevented her from securing a new trial improperly assumes the Wyoming Constitution grants her full legal redress for all claims. This is not so. The provision guarantees access to the court — which she had when she filed her complaint and testified at trial.

[¶62] Having found the district court did not abuse its discretion when it sanctioned Ms. Boline for actual costs incurred from the mistrial, we conclude the district court's dismissal following her failure to pay the sanction did not violate her rights under Article 1, § 8 of the Wyoming Constitution.

## CONCLUSION

[¶63] Although Ms. Boline has expressed sincere remorse for violating the district court's pretrial order, the orderly administration of justice requires parties to comply with court orders. When that does not occur, courts must have the means to enforce their sanctions to dissuade individuals from interfering with judicial proceedings. The district court's award of sanctions and subsequent dismissal of the case were not an abuse of discretion. Ms. Boline had meaningful access to the court when she filed her complaint and prosecuted her case up until the point she intentionally disregarded a pretrial order. The district court also did not violate her rights under the Wyoming Constitution when it dismissed her case for failure to pay her sanction.

[¶64] Affirmed.

16